UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
DAVID BLUNI,

    *Plaintiff*,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
----------------------------X

<u>**MEMORANDUM AND ORDER**</u>

1:20-cv-02984 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff David Bluni appeals the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), finding him not disabled within the meaning of the Social Security Act ("Act") and therefore not eligible for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Presently before the Court are Plaintiff's motion for judgment on the pleadings, vacating the final decision of the Commissioner and remanding for further proceedings, (ECF No. 18, Plaintiff's Motion for Judgment on the Pleadings), and Defendant's cross-motion for judgment on the pleadings, (ECF No. 20, Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings). For the reasons stated below, Plaintiff's motion is granted, Defendant's motion is

1

denied, and the case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

On June 24, 2016, Plaintiff filed applications for DIB and SSI, alleging disability since May 27, 2016. (ECF Nos. 9 – 9-10, together, Administrative Transcript ("Tr."), at 13.) Plaintiff claimed that he was disabled due to sequalae from bladder cancer, gastroesophageal reflux disorder, and musculoskeletal pain. (*Id.* at 314.) His applications were denied on November 4, 2016. (*Id.* at 13.)

On November 10, 2016, Plaintiff filed a written request for a hearing before an administrative law judge. (*Id.*) Administrative Law Judge Dina R. Loewy ("ALJ") held two hearings by video, on October 8, 2018 and May 21, 2019, during which Plaintiff appeared and testified. (*Id.*) Plaintiff was represented by attorneys William Aronin, Esq. at the first hearing, and by Amy Shenstone, Esq. at the second hearing. (*Id.* at 38, 75.) Dawn Blythe, a vocational expert, appeared at the May 21, 2019 hearing and offered opinion testimony. (*Id.* at 77.) In a decision dated August 8, 2019, the ALJ determined that Plaintiff was not disabled, and Plaintiff appealed her decision to the Appeals Council. (*Id.* at 26.) On May 1, 2020, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner. (*Id.* at 1.)

Plaintiff initiated the instant action on July 6, 2020, represented by new counsel, Christopher James Bowes. (ECF No. 1, Complaint ("Compl.").)  On July 9, 2020, the Court issued a scheduling order.  (ECF No. 5, Scheduling Order.)  On December 29, 2020, Defendant filed the Administrative Transcript.  (Tr.)

On August 3, 2021, Plaintiff filed his notice of motion and memorandum of law in support of his motion for judgment on the pleadings. (ECF Nos. 18 and 19.)  On August 3, 2021, Defendant filed the cross-motion and memorandum of law in support of Defendant's cross-motion for judgment on the pleadings and in opposition to Plaintiff's motion. (ECF No. 20 and 21.)  That same day, Plaintiff filed a reply in further support of his motion for judgment on the pleadings.  (ECF No. 22).

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal

3

quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

4

§ 423(d)(1)(A).   The impairment must be of "such severity" that
the claimant is unable to do his previous work or engage in any
other kind of substantial gainful work.  *Id.* § 423(d)(2)(A).  "The
Commissioner must consider the following in determining a
claimant's entitlement to benefits: '(1) the objective medical
facts [and clinical findings]; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or disability
. . . ; and (4) the claimant's educational background, age, and
work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262
(E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir.
1999) (alterations in original)).

Pursuant to regulations promulgated by the
Commissioner, a five-step sequential evaluation process is used
to determine whether the claimant's condition meets the Act's
definition of disability.  *See* 20 C.F.R. § 404.1520.  This process
can be summarized as follows:

> [I]f the Commissioner determines (1) that the claimant
> is not working, (2) that he has a 'severe impairment,'
> (3) that the impairment is not one [listed in Appendix
> 1 of the regulations] that conclusively requires a
> determination of disability, and (4) that the claimant
> is not capable of continuing in his prior type of work,
> the Commissioner must find him disabled if (5) there is
> not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation
omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

5

During this five-step process, the Commissioner must consider whether the combined effect of any such impairment would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c). Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2). At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## DISCUSSION

### I.  The ALJ's Disability Determination

Using the five-step sequential process described above, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 27, 2016, the alleged onset date.  (Tr. at 16.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post bladder cancer, obesity, post-traumatic stress disorder ("PTSD"), a major depressive disorder, and a panic disorder. (*Id.*)  The ALJ found that Plaintiff's impairments "significantly limit [his] ability to perform basic work activities." (*Id.*)

At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that equaled the severity of listed impairments under 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (Tr. at 16.)  First, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, did not equal in severity to the impairments set forth in Listing Sections 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety Related Disorders), and 12.15 (Trauma and Stressor Related Disorders).  (*Id.*)  According to the ALJ, although Plaintiff's mental impairments satisfied the various "A" criteria of the aforementioned listings, they failed to meet

the "B" and "C" criteria.   (*Id.* at 16—18.)   To satisfy the "B"
criteria, Plaintiff's mental impairments must result in at least
one extreme or two marked limitations in the following areas of
mental functioning: (1) understanding, remembering, or applying
information; (2) interacting with others; (3) concentrating,
persisting, or maintaining pace; and (4) adapting or managing
oneself.   (*Id.*)   Based on her review of Plaintiff's medical
records, the ALJ determined that Plaintiff had a moderate
limitation in each of the four areas of mental functioning.   (*Id.*)
The ALJ determined that Plaintiff had a moderate limitation in
understanding, remembering, or applying information, based on the
January 27, 2017 report of Dr. Victoria Nichols, Plaintiff's
psychologist, which stated that Plaintiff has an average IQ and
normal recent and remote memories, and Plaintiff's August 10, 2016
Adult Function Report, in which he noted that he did not need help
or reminders to care for his personal needs or to take medication.
(*Id.*)   The ALJ determined that Plaintiff had a moderate limitation
in interacting with others, reasoning that although Plaintiff's
medical records noted that Plaintiff isolated himself socially,
Plaintiff stated in the Adult Function Report that he spent time
with others three times a week and had no problem getting along
with family, friends, neighbors, or others.   (*Id.*)   As for the
third area of mental functioning, concentrating, persisting, or
maintaining pace, the ALJ also found a moderate limitation, noting

8

that though Dr. Nichols reported Plaintiff having distractible attention and poor concentration on January 27, 2017, Plaintiff stated in the Adult Function Report that he could follow written and oral instructions, which indicated that he had sufficient attention and concentration. (*Id.*)  Finally, the ALJ determined that Plaintiff had a moderate limitation in adapting or managing oneself, having observed that Plaintiff consistently tested as having good to fair insight, judgment, and impulse control. (*Id.*) The ALJ concluded that Plaintiff's mental impairments did not satisfy the "C" criteria of Listing Sections 12.04, 12.06, and 12.15, reasoning, "there is no evidence that [Plaintiff] has a serious and persistent mental disorder of two or more years with evidence of both: (1) mental health treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of a mental disorder; and (2) a minimal capacity to adapt to changes to [his] environment or to demands that are not already part of [his] daily life." (*Id.* at 17—18.)

Next, the ALJ determined that Plaintiff's bladder cancer was not equal in severity to the criteria of Listing Section 13.22 (Urinary Bladder Carcinoma) because there was no evidence of carcinoma that infiltrated beyond the bladder wall, was recurrent after total cystectomy, was inoperable or unresectable, with metastases to or beyond the regional lymph nodes, or of small-cell

9

(oat-cell) carcinoma. (*Id.* at 18.) The ALJ noted that Plaintiff's bladder cancer had not recurred since October 2016. (*Id.*)

At step four of the five-step sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform medium work,[1] with the following conditions: (1) occasionally climbing ramps or stairs; (2) never climbing ladders, ropes, or scaffolds; (3) occasionally balancing; (4) frequently stooping; (5) occasionally kneeling; (6) frequently crouching; (7) never crawling; (8) avoiding concentrated exposure to extreme temperatures, wetness, and humidity; (9) avoiding even moderate exposure to irritants such as fumes, odors, dusts, gases, and poorly ventilated areas; (10) avoiding all exposure to hazardous machinery, unprotected heights, and operational control of moving machinery; (11) simple, routine tasks; (12) low stress jobs defined as only occasional decision-making and only occasional changes in the work setting; (13) no conveyor belt work; and (14) only occasional interaction with the public or co-workers and supervisors. (*Id.*)

---

[1]     The Court notes that though the ALJ cites to 20 C.F.R. §§ 404.1567(b) and 416.967(b) for the definition of medium work, medium work is defined under 20 C.F.R. §§ 404.1567(c) and 416.967(c), as "work [that] involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." "If someone can do medium work, . . . he or she can also do sedentary and light work," and light work "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b)-(c), 416.967(b)-(c).

In determining that Plaintiff had the RFC to perform medium work, with the aforementioned conditions, the ALJ relied on Plaintiff's hearing testimony and medical records that included, among others, pharmacy records, hospital records, and treatment records from Drs. Nichols (psychologist), Anthony Conciatori (psychiatrist), Brian Mignola (primary care provider), David Puro (psychologist), and Plaintiff's treating urologist, Dr. Karanikolas. (*Id.* at 18-24.) The ALJ reasoned that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 21.)

With regards to the physical impairments, the ALJ determined that Plaintiff's testimony that he is unable to work and that it is difficult him to go out due to urinary pain and frequency is not supported by his treatment records, which stated that his urinary symptoms improved with medication and that he reported feeling well and denied experiencing dysuria to his urologist. (*Id.*) The ALJ noted that Plaintiff's "overall physical examinations have remained primarily benign since his two bladder surgeries" and that his bladder cancer has not recurred since October 2016. (*Id.*) The ALJ also noted the inconsistencies

11

between Plaintiff's reports to his mental health professionals and primary care provider, and what he reported his urologist, with regards to the intensity and limiting effects of his urinary symptoms. (*Id.*)

The ALJ gave little weight to Dr. Mignola's August 2, 2016 opinion that Plaintiff could never perform exertional activities or postural functions, reasoning that the opinion was rendered two months after Plaintiff's first resection surgery, Plaintiff's overall physical health has improved since, and his bladder cancer has not recurred. (*Id.* at 22.) In addition, the ALJ noted that Plaintiff would have had to perform at least some exertional and postural functions to attend his hospital visits and undergo procedures. (*Id.* at 22.)

The ALJ similarly afforded little weight to Dr. Mignola's November 8, 2018 opinion that Plaintiff was 100% disabled and that his symptoms made it impossible for him to work, reasoning that Dr. Mignola's treatment notes demonstrated that Plaintiff's physical examinations were overall benign, with the exception of his urinary symptoms, which had improved with medication. (*Id.*) She also noted that Plaintiff's bladder cancer is in remission and there was no indication of Plaintiff's obesity limiting his physical functioning. (*Id.*) Finally, the ALJ gave little weight to Dr. Mignola's April 30, 2019 opinion that Plaintiff was either completely disabled or limited to sitting for an hour and standing

and/or walking for 15 minutes, and was unable to perform any postural functions, having found that the opinion was inconsistent with Dr. Mignola's own treatment records, as well as the treatment records of Plaintiff's urologist. (*Id.* at 23.)  For these reasons, the ALJ concluded that Plaintiff was capable of performing work-related physical activities.

As for Plaintiff's mental impairments, the ALJ found that despite continuous reports by Plaintiff of symptoms of PTSD, panic, depression, and variable mood, Plaintiff's mental status examinations "show[ed] fairly benign results" and that Plaintiff reported more than once that medication helped stabilize his mood. (*Id.* at 22.)  The ALJ gave little weight to Dr. Puro's October 26, 2018 opinion that Dr. Conciatori should raise Plaintiff's level of disability to one hundred percent, reasoning that the opinion was "not based on any objective evidence," but a desire to increase the amount of Plaintiff's worker's compensation benefit. (*Id.* at 23.)  The ALJ likewise afforded little weight to Dr. Puro's opinions that Plaintiff was disabled and had poor to no ability to perform work-related mental activities, and concluded that such opinions were based not on Dr. Puro's objective assessment of Plaintiff's mental functioning but Plaintiff's subjective complaints regarding his symptoms. (*Id.*)  She also added that any disability determination was reserved to the Commissioner. (*Id.*)

Similarly, the ALJ afforded little weight to Dr. Nichols' July 31, 2017 and May 26, 2017 opinions that Plaintiff was unable to work, reasoning that such opinions were based on Plaintiff's self-reporting and not on formal mental status examinations by Dr. Nichols. (*Id.*)  The ALJ also noted that Plaintiff's psychological symptoms were caused by stressors related to his life events and were not "independent psychological symptoms." (*Id.*)  The ALJ gave little weight to Dr. Conciatori's opinion that Plaintiff was psychiatrically disabled and had poor to no ability to perform various work-related mental activities, reasoning that the results of Plaintiff's mental health examinations were benign overall, other than his variable mood, Plaintiff was given a Global Assessment of Functioning ("GAF")[2] score of 60, his psychological symptoms improved with medication, and Plaintiff mainly complained of stressors related to family, financial, and medical issues. (*Id.*)

At step five of the sequential evaluation process, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, he would not be able to return to his past

---

[2]   "The Global Assessment of Functioning (GAF) Scale (DSM—IV Axis V) ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  Courts in this Circuit have recognized that "the utility of this metric is debatable, particularly after its exclusion from the fifth edition of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS." *Berry v. Comm'r of Soc. Sec.*, No. 14-cv-3977(KPF), 2015 WL 4557374, at *3 n.10 (S.D.N.Y. July 29, 2015)

relevant work as a commercial cleaner, which is too physically demanding. (*Id.* at 24.)  The ALJ took the vocational expert's testimony into account in arriving at this conclusion. (*Id.*)  In addition, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 404.1569, 404.1569a). (*Id.* at 25.)  At the May 21, 2019 hearing, the vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as Photocopy Machine Operator, Mail Clerk, and Page. (*Id.*)  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 404.1520(g). (*Id.* at 26.)

## II.  The ALJ's Assessment of Opinion Evidence

Under the treating physician rule, the opinion of a claimant's treating physician as to "the nature and severity of the [claimant's] impairment is given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 128; 20 C.F.R. § 404.1527(c)(2)).[3]  An ALJ who does not accord

---

[3]    In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  However, because Plaintiff filed his claims on June 24, 2016, the previous regulations, including the treating physician rule, still apply.

controlling weight to a treating physician's medical opinion must explicitly consider the following non-exclusive *Burgess* factors in determining how much weight to give to the opinion: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (citation omitted); *see* 20 C.F.R. § 404.1527(c)(2); *see also Coard Adukpo v. Berryhill*, No. 19-cv-2709(BMC), 2020 WL 3410333, at *1 (E.D.N.Y. Jun. 22, 2020). "The ALJ must then 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 75 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).

However, "a treating physician's conclusion that a claimant is disabled is not entitled to controlling weight, as this determination is reserved to the Commissioner." *Quiles v. Saul*, 19-cv-11181(KNF), 2021 WL 848197, at *9 (S.D.N.Y. Mar. 5, 2021). "[W]hen an ALJ discounts a treating physician's opinion that a claimant is disabled, the ALJ is obligated to give good reasons for doing so." *Id.*

Plaintiff contends that the ALJ improperly rejected the opinions of his treating psychologist, Dr. Puro, and psychiatrist, Dr. Conciatori. (ECF No. 19, Plaintiff's Memorandum of Law in

Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), at 11–12.)   The Court discusses each of their opinions in turn.

### The ALJ's Consideration of Dr. Puro's Opinions

The Court finds that the ALJ reasonably afforded little weight to Dr. Puro's October 26, 2018 opinion that Dr. Conciatori should raise Plaintiff's level of disability from eighty-five to one hundred percent, having found that Dr. Puro's own notes, which stated, "contact Dr. Conciatori-raise disability to 100%-causing problem with $," (Tr. at 1007), indicated that such opinion was based not on Dr. Puro's assessment of Plaintiff's mental functioning but rather his "feeling that the level of disability should be raised so as not to interfere with [Plaintiff's] worker's compensation benefit amounts." (*Id.* at 21, 23.)   However, the Court concludes that the ALJ  did not provide good reasons for discounting Dr. Puro's September 21, 2018 opinion that Plaintiff was permanently and totally disabled.   All that the ALJ gave as the basis for her decision was her conclusory statement that Dr. Puro did not perform an objective assessment of Plaintiff's mental ability but overly relied on Plaintiff's subjective complaints regarding his symptoms. (*Id.* at 23.)

Additionally,   the   Court   finds   that   the   ALJ,   in concluding that Dr. Puro's opinions on the nature and severity of Plaintiff's mental impairments, or his diagnoses, are not entitled

17

to controlling weight, erred by failing to consider many of the *Burgess* factors, such as the frequency, nature, and extent of Dr. Puro's treating relationship with Plaintiff.  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight [to a treating physician's opinion] is a procedural error." *Estrella*, 925 F.3d at 96 (*citing Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013)).  *See Day v. Astrue*, No. 09-cv-00131(DRH), 2011 WL 1467652, at *15 (E.D.N.Y. Apr. 18, 2011) ("[F]ailure to follow the treating physician rule is a failure to apply the proper legal standard and is grounds for reversal.").

In Dr. Puro's September 21, 2018 assessment of Plaintiff's ability to perform work-related mental abilities, he opined that Plaintiff is "severely depressed, anxious and agitated," and that his psychological symptoms interfere with his cognitive functioning. (Tr. at 832–33.)  He determined that, other than maintaining his personal appearance, Plaintiff has poor to zero ability to perform the activities requisite to adjusting to a job, such as, among others, following work rules, understanding, remembering, and carrying out job instructions, relating to co-workers, dealing with the public, using judgment, interacting with supervisor(s), functioning independently, and maintaining attention/concentration. (*Id.*) These opinions are also consistent with Dr. Puro's treatment records from September 5, 2018 to May 1, 2019, in which he repeated noted that Plaintiff is

18

severely depressed, anxious, and agitated, has difficulty focusing and concentrating, suffers from PTSD, has flashbacks of 9/11, has trouble functioning day to day, and is socially isolated and withdrawn. (*Id.* at 837–41, 980–1010.)

The ALJ arrived at an RFC inconsistent with the diagnoses of Dr. Puro, Plaintiff's treating psychologist, finding Plaintiff capable of performing medium work that involves "simple, routine tasks" and "low stress," with "only occasional decision-making . . . changes in the work setting . . . interaction with the public or co-workers and supervisors." (*Id.* at 18.)  Though the ALJ made note of Dr. Puro's diagnoses, (*Id.* at 21), she did not analyze them using the *Burgess* factors nor provided good reasons for not according them controlling weight.  In fact, nowhere in the ALJ's decision does it mention how much weight she accorded Dr. Puro's diagnoses.  And the ALJ did not provide any basis for her decision to give greater weight to Dr. Conciatori's mental status examinations of Plaintiff than Dr. Puro's diagnoses, nor did she proffer scientific support for her conclusion that Plaintiff's psychological symptoms are less serious because they "stemmed form his worry about his financial, family and physical health stressors." (*Id.* at 22.)

Additionally, the Court finds that the ALJ cherry-picked parts of Plaintiff's medical records that supported her conclusion, while ignoring the portions of the records that did

19

not further corroborate her findings.  The Court is cognizant that
an ALJ may "only credit portions of a medical source opinion, or
weigh different parts of the opinion differently," however, the
ALJ must always "provid[e] sound reasons for the discrepancy."
*Destina v. Berryhill*, 17-cv-2382(ADS), 2018 WL 4964103, at *6
(E.D.N.Y. Oct. 15, 2018).  Here, the ALJ, in concluding that
Plaintiff's medical impairments are not as severe as Plaintiff
suggested, noted that "[o]ne of his treating mental health
providers noted that the claimant experienced moderate levels of
anxiety and stress" and that Plaintiff was assessed a GAF score of
60.  (Tr. at 22.)  It appears that the ALJ relied on the May 26,
2017 opinion of Dr. Nichols, who treated Plaintiff from December
2016 to May 2017, (*Id.* at 694-714), but did not provide any reasons
for her reliance on Dr. Nichols' opinion over the diagnoses of Dr.
Puro.  *See Clarke v. Colvin*, No. 15-cv-354, 2017 WL 1215362, at *9
(S.D.N.Y. Apr. 3, 2017) ("[A]n ALJ may not 'pick and choose
evidence which favors a finding that the claimant is not
disabled.'") (citing *Rodriguez v. Astrue*, No. 07-cv-534, 2009 WL
637154, at *25 (S.D.N.Y. Mar. 9, 2009)).  Finally, the ALJ
acknowledged that a GAF score is a "snapshot assessment" and does
"not represent [Plaintiff's] overall functioning over any
significant period of time" but did not explain why she then
accorded more weight to a GAF score indicating only moderate mental

limitations over Plaintiff's treating psychologist's diagnoses finding him severely impaired.

Accordingly, the Court finds that the ALJ's improper discounting of Dr. Puro's diagnoses without a sufficient explanation warrants a remand.  On remand, the ALJ is directed to comprehensively weigh and apply the regulatory factors and consider the record in its entirety to determine the weight of Dr. Puro's diagnoses.  If the ALJ determines that the opinions of Plaintiff's treating physician are not entitled to controlling weight, the ALJ "must nonetheless articulate a basis for the alternative weight assigned."  *Knight v. Comm'r*, No. 18-cv-2474(KAM), 2020 WL 3085778 at *7 (E.D.N.Y. June 10, 2020).

## The ALJ's Consideration of Dr. Conciatori's Opinions

The Court finds that the ALJ offered good reasons for giving little weight to Dr. Conciatori's opinion finding Plaintiff psychiatrically disabled, based on the inconsistencies between the disability determination and Dr. Conciatori's own reports of mental status examinations that he conducted on Plaintiff, in which he consistently found that Plaintiff "ma[de] fair eye contact," "show[ed] normal psychomotor status," had "reactive/appropriate" affect, "congruent" mood, "goal-oriented" thought process, and good insight, judgment, and impulse control.  (Tr. at 24, 715–17, 719, 825–30, 923–41.)  The ALJ also noted that Plaintiff cares for his autistic son, "a task which requires greater physical and

21

mental functional abilities than [Plaintiff] is alleging," and that Dr. Conciatori's treatment notes indicated that Plaintiff's psychological symptoms showed improvements with medication. (*Id.* at 24.)

The Court next turns to Dr. Conciatori's opinion regarding the nature and severity of Plaintiff's mental impairments. In Dr. Conciatori's September 26, 2018 medical assessment of Plaintiff's ability to perform work-related mental activities, he opined that Plaintiff has poor concentration, poor response to stress from environments, poor frustration tolerance, a poor organizational skill set, and is irritable. (*Id.* at 834-35.) Additionally, Dr. Conciatori determined that Plaintiff has seriously limited ability to follow work rules, relate to co-workers, use judgment, and understand, remember, and carry out simple to detailed job instructions. (*Id.*) Finally, he opined that Plaintiff has poor to no ability to deal with the public, interact with supervisor(s), deal with work stresses, function independently, maintain attention/concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (*Id.*)

The Court finds that like her treatment of Dr. Puro's diagnoses, the ALJ, in deciding to afford little weight to Dr. Conciatori's opinion that Plaintiff had seriously limited to no ability to perform a range of work-related mental abilities, erred

22

by failing to consider many of the *Burgess* factors, such as the frequency, nature, and extent of Dr. Conciatori's treating relationship with Plaintiff.  Nevertheless, the Court finds this error not reversible, based on the sound reasons provided by the ALJ for not according controlling weight to Dr. Conciatori's opinion, namely that it is inconsistent with his own treatment notes stating that Plaintiff's psychological symptoms have shown improvements with medication and the results of his mental status examinations on Plaintiff.  *Cf. Quiles*, 2021 WL 848197, at *9 ("In the absence of other good reasons for the weight assigned to the treating physician's opinion, failure to apply the *Burgess* factors is grounds for remand.").

Thus, because the ALJ set forth good reasons for the respective weight she assigned to Dr. Conciatori's opinions, the Court finds that ALJ properly applied the treating physician rule.

**III. Substantial Evidence Supports the ALJ's Findings that Plaintiff Is Not Disabled Due to His Physical Impairments**

In reviewing decisions of the ALJ, the Court must determine whether substantial evidence supports her decision. *Jones ex rel. T.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at *4 (E.D.N.Y. Mar. 17, 2010).  "Substantial evidence" is relevant evidence which a "reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31.

23

Plaintiff argues that the ALJ "ignored [Plaintiff's] complaints regarding frequency, urinary incontinence, and BCG treatments." (Pl. Mem. at 5.) As an initial matter, the Court finds that the ALJ did not "fail[ ] to account for how Plaintiff's urinary frequency, urinary incontinence, and treatments with BCG would interfere with his ability to hold a job." (*Id.* at 6.) Rather, the ALJ concluded that Plaintiff's urinary symptoms were not as severe as Plaintiff alleged them to be, based on her review of Plaintiff's medical records, and that the BCG treatment regimen was not so restrictive as to render Plaintiff unable to work. (Tr. at 21.)

The Court finds that there is substantial evidence in the record to support the ALJ's determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his urinary symptoms "are not entirely consistent with the medical evidence." (*Id.*) Specifically, the Court finds that Plaintiff's testimony and Dr. Mignola's November 8, 2018 opinion that Plaintiff's urinary frequency and incontinence, and "pain from cancer" are so severe that he is prohibited from working, are not supported by the treatment notes of his urologist, Dr. Karanikolas. (*Id.* at 798–801, 842–65, 920.) Dr. Karanikolas treatment notes from February 15, 2017 to October 4, 2018, indicate that the results of Plaintiff's cystoscopies were benign, showing no evidence of recurrence of Plaintiff's bladder cancer, and that

24

Plaintiff did not experience any major complications from BCG treatment. (*Id.* at 798—801, 842—65.)  Dr. Karanikolas did note Plaintiff's urinal frequency on July 26, 2017, but he attributed it to Plaintiff's water intake, which indicated that he did not find the frequency troubling. (*Id.* at 862.)  Furthermore, Dr. Karanikolas' treatment notes from February 28, 2018 state that Plaintiff specifically denied experiencing dysuria, hematuria, lower urinary tract symptoms, or fever or chills. (*Id.* at 850—52.)  Moreover, although Plaintiff complained of suffering from intermittent right flank pain, Dr. Karanikolas' treatment notes from March 14, 2018 indicate that the pain was resolved by then. (*Id.*)  Finally, as the ALJ noted, although Plaintiff testified that he wears diapers all the time due to the severity of his urinary incontinence, there was no mention of diapers anywhere in Dr. Karanikolas' treatment records. (*Id.* at 21.)

The Court also notes, as the ALJ did, the inconsistencies between the treatment records of Drs. Mignola and Karanikolas with regard to the severity of Plaintiff's physical impairments.  For example, Dr. Mignola, Plaintiff's primary care provider, stated in his treatment notes dated September 5, 2017 that Plaintiff was experiencing abdominal pain from BCG treatment. (*Id.* at 739.) However, Dr. Karanikolas' treatment records do not mention of any abdominal pain or complications from Plaintiff's August 2017 BCG treatment, other than low grade temperature and passing of clots

25

after the second BCG instillation, which resolved after 24 hours. (*Id.* at 856—61.)  Similarly, Dr. Mignola reported in his treatment notes dated November 12, 2018 that Plaintiff was experiencing "frequent urination and pressure," penile pain, and acute, bloody, and burning discharge that started months ago, but Dr. Karanikolas noted no complications during Plaintiff's October 4, 2018 cystoscopy visit, during which a "flexible cystoscope was used to visualize the urethra and bladder."  (Tr. at 843.)

Based on the foregoing, the Court finds that there is sufficient evidence in the record for "a reasonable mind [to] accept as adequate to support" the conclusion that Plaintiff possesses the RFC to perform medium work.  *Halloran*, 362 F.3d at 31.

**CONCLUSION**

Federal regulations explicitly authorize a court, when reviewing decisions of the Commissioner, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir. 1996)

For the reasons previously set forth, the Court grants Plaintiff's motion for judgment on the pleadings; denies Defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to close this case and enter judgment in favor of Plaintiff. The parties shall confer in an attempt to resolve Plaintiff's request for attorney's fees.

**SO ORDERED.**

DATED:      February 10, 2022
            Brooklyn, New York

                                        _____
                                                  /s/
                                        **HON. KIYO A. MATSUMOTO**
                                        United States District Judge